# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN E. REDSTONE, KARL H. SCHULZ, and DEAN M. BASTILLA, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> GOOGLE, INC., <br><br> Defendant. | Cause No: 3:10-cv-00400-JPG -DGW <br><br> CLASS ACTION |

## COMPLAINT

COME NOW Plaintiffs, individually, and on behalf of all others similarly situated, by and through their undersigned counsel, on information and belief, and for their Complaint against Defendant GOOGLE INC. state as follows:

1. Over the course of the last four years, Defendant has unlawfully intercepted private electronic communications while it engaged in a photographic survey of public roadways. This practice violates federal law.

### PARTIES, JURISDICTION AND VENUE

2. John E. Redstone is a natural person and citizen and resident of the Southern District of Illinois.

3. Karl H. Schulz is a natural person and citizen and resident of the Southern District of Illinois.

4. Dean M. Bastilla is a natural person and citizen and resident of the Southern District of Illinois.

5. All references to "Plaintiff(s)" throughout this Complaint are made on behalf of the named Plaintiffs and the proposed plaintiff class(es), and vice versa.

6. The amount in controversy in this action, as defined by 28 U.S.C. § 1332(d)(6), exceeds $5,000,000 exclusive of costs and interest.

7. Defendant is a citizen of California and Delaware as defined by 28 U.S.C. § 1332(c) as it is a Delaware company with its principal place of business in California.

8. Defendant operates a number of interactive websites, such as Google Maps (maps.google.com), from datacenters located throughout the Country.

9. Defendant is a resident of the Southern District of Illinois as it is has ongoing and systematic contacts with residents of the Southern District of Illinois. Defendant has, at all material times, conducted business, including the operation of interactive websites with and the sale of advertising to residents of the Southern District of Illinois. Moreover, Defendant has sufficient minimum contacts with the State of Illinois such that the assumption of jurisdiction will not offend traditional notions of fair play and substantial justice.

10. When reference in this Complaint is made to any act or omission of Defendant, it should be deemed to mean that the officers, directors, agents, employees, or representatives of Defendant committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendant, and did so while acting within the scope of their employment or agency.

**STATEMENT OF FACTS**

11. Google Street View is a feature of Google Maps and Google Earth that provides photographic views from various positions along many streets, roads and pathways throughout the world.

12. Google Street View displays images taken from a fleet of specially adapted cars. On each of these cars there are nine directional cameras for 360° views at a height of about 2.5 meters, GPS units for positioning, three laser range scanners for the measuring of up to 50 meters 180° in the front of the vehicle.

13. By December 9, 2008, Street View contained photographic coverage of all large and most medium-sized urban areas and most major highways and connecting arteries throughout the 48 contiguous states.

14. From its beginning, Street View has drawn the scrutiny of privacy advocates. In 2007, privacy advocates objected to Street View as it contained photographs of men leaving strip clubs, protesters at an abortion clinic, sunbathers in bikinis, and people engaging in activities that although visible from public property in which they would objectively not wish to be accessible to anyone with an internet connection.

15. Google countered these criticisms by arguing that as the photos taken from public property the subjects of those pictures had no reasonable expectation of privacy. However, following the objections of privacy advocates, Google implemented policies meant to prevent identification of individuals and property photographed by its Street View vehicles.

16. In April 2010, however, Germany's Federal Commissioner for Data Protection, Peter Schaar, discovered that Google's Street View vehicles were collecting much more than photographs.

17. In addition to nine directional cameras, Google's Street View vehicles were also equipped with antennas and electronic devices for the purpose of scanning and recording information concerning and transmitted on cellular and IEEE 802.11 based wireless (Wi-Fi) local area network devices.

18. The Google Street View vehicles were also equipped with specially designed computer software written by Google to sample, collect and decode the electronic communications traveling on these networks.

19. The Google Street View vehicles used this equipment to intercept and record Wi-Fi network device names and locations and the devices' unique MAC address[1] of wireless networks devices and to intercept and record information concerning the substance, purport, or meaning of the electronic communications transmitted and received on the networks the vehicles encountered while compiling Google's photographic survey.

20. The information that travels on Cellular and Wi-Fi networks is not readily accessible to the general public as it is scrambled and in some cases encrypted and as such requires sophisticated computer software to understand.  As such, it is protected from interception by State and Federal law.

21. Google intercepted, recorded and collected record information concerning the substance, purport, or meaning of the electronic communications transmitted and received on the networks the vehicles encountered without the authorization of the parties to those communications or the owners of those networks.

---

[1] Media Access Control address (MAC address) is a unique identifier assigned to most network adapters or network interface cards (NICs) by the manufacturer for identification, and used in the Media Access Control protocol sub-layer. If assigned by the manufacturer, a MAC address usually encodes the manufacturer's registered identification number. It may also be known as an Ethernet Hardware Address (EHA), hardware address, adapter address, or physical address.

22. During all times relevant herein, Mr. Redstone used and maintained a cellular phone and a IEEE 802.11 based wireless local area network device to receive and transmit private electronic communications at his home.

23. Pictures of Mr. Redstone's home appear in photographs taken by Google's Street View vehicles.

24. On information and belief, the Google Street View vehicle intercepted and stored Mr. Redstone's private electronic communications transmitted on his cellular phone and/or his IEEE 802.11 based wireless local area network device at his home while it compiled its photographic survey of the street surrounding Mr. Redstone's home.

25. During all times relevant herein, Mr. Schulz used and maintained a cellular phone and a IEEE 802.11 based wireless local area network device to receive and transmit private electronic communications at his home.

26. Pictures of Mr. Schulz's home appear in photographs taken by Google's Street View vehicles.

27. On information and belief, the Google Street View vehicle intercepted and stored Mr. Schultz's private electronic communications transmitted on his cellular phone and/or his his IEEE 802.11 based wireless local area network device at his home while it compiled its photographic survey of the street surrounding Mr. Schulz's home.

28. During all times relevant herein, Mr. Bastilla used and maintained a cellular phone and a IEEE 802.11 based wireless local area network device to receive and transmit private electronic communications at his home.

29. Pictures of Mr. Bastilla's home appear in photographs taken by Google's Street View vehicles.

30. On information and belief, the Google Street View vehicle intercepted and stored Mr. Bastille's private electronic communications transmitted on his cellular phone and/or his his IEEE 802.11 based wireless local area network device at his home while it compiled its photographic survey of the street surrounding Mr. Bastilla's home.

31. Plaintiffs and Class Members, as defined below, were unaware of Defendant's wrongful conduct, and unable to discover it until April, 2010.

## CLASS ACTION ALLEGATIONS

32. This action is brought as a class action by Plaintiffs on behalf of themselves and on behalf of all those similarly situated pursuant to Rule 23(a) and 23(b)(1), (2), and (3) of the Federal Rules of Civil Procedure. The proposed class is defined as follows:

> All United States residents who operate a IEEE 802.11 based wireless local area network device from which Google collected electronic communications. (the "Class" or "Class Members").
>
> Specifically excluded from the class are: any Judge conducting proceedings in this action and their parents, spouses and children as well as any other member of their family residing in the judge's household; counsel of record in this action; the legal representatives, heirs, successors and assigns of any excluded person.

33. The exact number of the members of the class (or sub-classes) is not presently known, but is so numerous that joinder of individual members in this action is impracticable. The exact number of the members of the class (or sub-classes) can only be ascertained through discovery, because such information is in the exclusive control of Defendant. However, based on the nature of the activities alleged herein, Plaintiffs believe that the members of the class (or sub-classes) number the millions and are geographically dispersed throughout the United States. The addresses of the members of the class (or sub-classes) are readily obtainable from the Defendant and its agents and on information and belief are maintained in the computer database

6

of Defendant and are easily retrievable.

34. Plaintiffs will fairly and adequately protect the interests of the class (or sub-classes) and have retained counsel that are experienced and capable in class action litigation. Plaintiffs understand and appreciate their duties to the class (or sub-classes) under Fed. R. Civ. P. 23 and are committed to vigorously protecting the rights of absent members of the class (or sub-classes).

35. Plaintiffs are asserting claims that are typical of the claims of each member of the class (or sub-classes) they seek to represent, in that the claims of all members of the class (or sub-classes), including Plaintiffs, depend upon a showing that the Defendant violated federal law.  All claims alleged on behalf of the class (or sub-classes) flow from this conduct as well. Further, there is no conflict between any Plaintiff and other members of the class (or sub-classes) with respect to this action.

36. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  Questions of law and fact arising out of Defendant's conduct are common to all members of the class (or sub-classes), and such common issues of law and fact predominate over any questions affecting only individual members of the class (or sub-classes).

37. Common issues of law and fact include, but are not limited to, the following:

   a. Whether the data collected from Plaintiffs' IEEE 802.11 based wireless local area network devices are electronic communications protected by the Federal Wiretap Act.;

   b. Whether Defendant's interception of data collected from Plaintiffs' IEEE 802.11 based wireless local area network devices was intentional within the meaning of the Federal Wiretap Act;

   c. The proper measure of damages under the Federal Wiretap Act;

38. The relief sought is common to the entirety of the class (or sub-classes).

39. Defendant has acted on grounds generally applicable to the class (or sub-classes), thereby making final injunctive relief or corresponding injunctive relief appropriate with respect to the class (or sub-classes) as a whole.

40. This action is properly maintained as a class action in that the prosecution of separate actions by individual members would create a risk of adjudication with respect to individual members which would establish incompatible standards of conduct for the Defendant.

41. This action is properly maintained as a class action in that the prosecution of separate actions by individual members of the class (or sub-classes) would create a risk of adjudications with respect to individual members of each class (or sub-classes) which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication, or would substantially impair or impede their ability to protect their interests.

42. A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein given that, among other things:

> (i) significant economies of time, effort, and expense will inure to the benefit of the Court and the parties in litigating the common issues on a class-wide instead of a repetitive individual basis;
>
> (ii) the size of the individual damages claims of most members of the class (or sub-classes) is too small to make individual litigation an economically viable alternative, such that few members of the class (or sub-classes) have any interest in individually controlling the prosecution of a separate action;
>
> (iii) without the representation provided by Plaintiffs herein, few, if any, members of the class (or sub-classes) will receive legal representation or redress for their injuries;
>
> (iv) class treatment is required for optimal deterrence;
>
> (v) despite the relatively small size of the claims of many individual members of the class (or sub-classes), their aggregate volume,

      coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost effective basis, especially when compared with repetitive individual litigation;

  (vi) no unusual difficulties are likely to be encountered in the management of this class action;

  (vii) plaintiffs and the members of the class (or sub-classes) have all suffered irreparable harm and damages as a result of Defendant's unlawful and wrongful conduct;

43. Concentrating this litigation in one forum would aid judicial economy and efficiency, promote parity among the claims of the individual members of the class (or sub-classes), and result in judicial consistency.

## COUNT I

44. Plaintiffs incorporate the allegations contained in Paragraphs 1 through 43 as if fully set out herein.

45. The Omnibus Crime Control and Safe Streets Act of 1968, also known as the Federal Wiretap Act, 18 U.S.C. § 2510 et seq., provides:

> [A]ny person who-- … intentionally intercepts, endeavors to intercept, … any wire, oral, or electronic communication; … shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S.C.A. § 2511.

46. At all times relevant hereto, Plaintiffs, and Class Members were persons entitled to the protection of 18 U.S.C. § 2511 as they were individuals who were party to electronic communications.

47. On information and belief, Defendant's Street View vehicles intercepted information concerning the substance, purport, or meaning of Plaintiffs' electronic communications on at least one occasion.

48.     The Federal Wiretap Act also provides that:

> [A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity … which engaged in that violation such relief as may be appropriate.
>
> In an action under this section, appropriate relief includes-- … (2) damages under subsection (c) and punitive damages in appropriate cases; and (3) a reasonable attorney's fee and other litigation costs reasonably incurred.… [T]he court may assess as damages whichever is the greater of-- (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

18  U.S.C § 2520

WHEREFORE, Plaintiffs and the Class pray that the Court enter judgment in their favor and against Defendant as follows:

a. Ordering that this action be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and

b. Declaring that Defendant's collection of electronic communications through the use of its Street View vehicles violates 18 U.S.C. § 2511; and

c. Awarding Plaintiffs and Class Members statutory damages pursuant to 18 U.S.C. § 2520, costs of suit, and attorneys' fees.

**KOREIN TILLERY**

/s Aaron M. Zigler
Stephen M. Tillery
Aaron M. Zigler
One U.S. Bank Plaza
505 N. 7th Street, Suite 3600
St. Louis, Missouri  63101-1625
Telephone:     (314) 241-4844
Facsimile:      (314) 450-4138
stillery@koreintillery.com
azigler@koreintillery.com

Stephen A. Swedlow
205 N. Michigan Avenue - Suite 1940

Chicago, Illinois  60601-4269
Telephone:     (312) 899-5064
Facsimile:     (312) 641-9555
sswedlow@koreintillery.com

***Attorneys for Plaintiffs***